# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS
# TOPEKA DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID TANNER, Individually, and d/b/a<br>    CAPITAL ENHANCEMENT CLUB,<br>ROCKY D. SPENCER,<br>MARROC CORP., and<br>RICHARD P. KRINGEN,<br><br>Defendants,<br><br>and<br><br>MARGARET F. SPENCER,<br>OMNIBUS LLC,<br>VECTRA RESOURCES, LLC, and<br>DYNAMIC ENVIRONMENTAL SOLUTIONS, INC.,<br><br>Relief Defendants. | Civil Action No.<br>05-4057-RDR |

**MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION TO MODIFY SCHEDULING ORDER TO REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF <u>DETERMINING THE TRUE IDENTITY OF DAVID TANNER AND OTHER RELIEF</u>**

> TIMOTHY P. DAVIS
> Kansas Bar No. 18647
> Texas Bar No. 00798134
>
> Attorney for Plaintiff
> Securities and Exchange Commission
> Burnett Plaza, Suite 1900
> 801 Cherry Street, Unit #18
> Fort Worth, TX  76102-6882
> (817) 978-6438
> (817) 978-4927 (fax)
> e-mail:  davistp@sec.gov


## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................iii

I.      Background ........................................................................................................... 2

          A.      Current status of the case as to defendant Tanner ................................. 2

          B.      Facts suggesting that "Tanner" is an alias for James Tucker .................. 4

          C.      Additional discovery should allow the Commission to definitively determine the true identity of Tanner ........................................................ 6

II.     Legal Argument .................................................................................................... 7

          A.      Some limited additional discovery serves the interest of justice.............. 7

          B.      The Commission should be allowed to serve Tucker by e-mail or regular mail ....................................................................................................... 9

III.    Requested Relief ................................................................................................ 11

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Bolden v. City of Topeka, Kansas*,
  441 F.3d 1129 (10th Cir. 2006) .......................................................................... 8

*Forum Fin. Group, LLC v. President, Fellows at Harvard College*,
  199 F.R.D. 22 (D. ME 2001) ............................................................................... 9

Hull v. Chevron U.S.A., Inc,
  812 F.2d 584 (10th Cir. 1987). .......................................................................... 7

*Int'l Controls Corp. v. Vesco*,
  593 F.2d 166 (2d Cir. 1979) ............................................................................... 9

*In re Int'l Telemedia Assoc.*,
  245 B.R. 713 (Bankr. N.D. Ga. 2000) .............................................................. 10

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) .............................................................................. 8

*Levin v. Ruby Trading Corp.*,
  248 F.Supp. 537 (S.D.N.Y 1965) ....................................................................... 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ......................................................................................... 10

*New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*,
  495 F.Supp. 73 (S.D.N.Y 1980) ......................................................................... 9

*Rio Properties, Inc., v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) .......................................................................... 10

*SEC v. Tome*,
  833 F.2d 1086 (2d Cir. 1987) ............................................................................. 9

*Smith v. Islamic Emirate*,
  Nos. 01 Civ. 10132, 01 Civ. 10144, 2001 WL 1658211, 2001 U.S.Dist. LEXIS 21712 (D.N.Y. 2001) ........................................................................... 9

Good cause exists to modify the Court's August 17, 2005, Scheduling Order [Doc. 89] to permit the Commission to take some limited additional discovery. Additional discovery is needed to determine the true identity of the person or persons who masterminded the CEC scheme and effectively stop defendant "David Tanner" from: (1) defrauding this Court, and (2) using a bogus identity to escape the demands of previously-entered judgments. In support of its motion, the Commission states:

### I.   Background

#### A.   *Current status of the case as to defendant Tanner*

On May 4, 2005, the Commission filed a Complaint alleging that Tanner masterminded a scheme to defrauded investors of at least $15 million through the fraudulent offer and sale of securities referred to as a "private joint venture investment." Operating under the name Capital Enhancement Club ("CEC"), Tanner and others falsely claimed that CEC would pay monthly interest of approximately 7% to 11% (120% to 260% annually) from "trading in international markets." In reality, CEC's trading program is nonexistent and the investor funds were pocketed by the Defendants or transferred to several offshore institutions for the benefit of the scheme's promoters.

In support of the emergency relief initially sought, the Commission demonstrated, among other things, that someone using the identity David Tanner (1) was identified in CEC materials as CEC's managing partner and webmaster, (2) registered and posted the CEC website, (3) established electronic currency ("E-Gold") accounts, some of

which, accepted CEC investor deposits, and (4) published periodic newsletters promoting CEC and instructing investors where to send their money.[1]

In response to discovery requests served with the Complaint, On May 12, 2005, Tanner's counsel submitted to the Commission a sworn declaration indicating Tanner's intention to assert his Fifth Amendment Right against self-incrimination. Interestingly, the declaration purported to carry Tanner's original signature.[2]

Contrary to defense counsel's representations that a real person named "David Tanner" signed the Fifth Amendment Declaration, the Commission and the Receiver soon started to suspect that Tanner was actually an alias for someone else. For example, on May 17, 2005, the Commission and the Receiver deposed Phillip Risby the president of relief defendant Dynamic Environmental Solutions ("DES"). Mr. Risby testified that funds traced from CEC investors to DES were actually the result of an investment in DES—not by Tanner—but by an American expatriate named James Tucker.[3]

On June 13, 2005, Tanner's Counsel filed an answer essentially denying each of the allegations directed at Tanner [Doc. 61].

On or about July 12, 2005, the Commission contacted Tanner's counsel and requested dates for an in-person deposition. Tanner's counsel vehemently opposed

---

[1] *Memorandum of Law in Support of Plaintiff's Application for an Ex Parte Temporary Restraining Order, Order Freezing Assets and Other Emergency Relief*; [Doc. 5].

[2] Tanner's counsel has also provided to the Commission a consent directive purportedly executed by Tanner.

[3] *Declaration of Receiver Larry Cook in Support of Unopposed Motion to Modify Scheduling Order to Reopen Discovery for the Limited Purpose of Determining the True Identity of David Tanner* ("Cook Dec."), ¶ 9, **Ex. A**, (excerpts of deposition of Phillip Risby).

attempts to depose his client and filed a motion for a protective order [Doc. 81]. On August 30, 2005, the Court denied Tanner's motion and ruled that he was to appear, in person, on September 30, 2005, for a deposition [Doc. 105].

Faced with the prospect of a compelled in-person appearance, Tanner's counsel approached the Commission with a settlement offer. On or about September 13, 2005, Tanner's counsel and the Commission negotiated an *Agreed Order of Permanent Injunction and Order of Disgorgement Against David Tanner* (the "Agreed Order")[Doc. 113]. The Agreed Order provided Tanner would accept (1) full injunctive relief, (2) the full $15 million of disgorgement pled by the Commission, and (3) additionally the Receiver could petition the Court for additional disgorgement if subsequent discovery in the matter demonstrated that CEC had actually raised an amount greater than the $15 million pled. Essentially, Tanner accepted a judgment greater than what was demanded in the Commission's Complaint so that he would not have to appear at a deposition. Additional Relief requested in the Commission's Complaint, including a civil penalty and pre-judgment interest, were to remain unresolved until completion of discovery.

### B.   Facts suggesting that "Tanner" is an alias for James Tucker

Following some additional discovery, it became clear why Tanner was eager to settle and avoid appearing in person. As described in the Receiver's declaration attached to this motion, the best information now available tends to indicate that the true identity of Tanner is actually James Tucker, who is believed to currently reside on the

Caribbean Island of St Maarten.[4]  Thus far, some of the evidence indicating that Tanner is really Tucker includes:

- When certain E-Gold accounts were established for the benefit of CEC and Tanner in December 2000, an account for James Tucker was established the following day using the same unique Internet Protocol ("IP") address;[5]

- Several hundred E-Gold transactions in both the CEC and Tucker accounts came from the same IP address;[6]

- As previously discussed, approximately $900,000 of CEC investor funds were sent to Relief Defendant DES at the direction of Tucker;[7]

- Approximately $1.8 million in CEC funds were used to purchase jewelry in the United States that was shipped to a retail store called Ballerina Jewelry in St Maarten.  The owner of Ballerina Jewelry told the Receiver that the jewelry was order by Tucker who arranged to pay the suppliers directly;[8]

- Tucker is a "founder" and "Managing Member" of Seaforth Meridian Ltd. ("Seaforth"), a United States hedge fund that, at Tucker's direction, received $9 million of CEC investor funds;[9]

- Tucker directed the payment of $5 million of CEC funds to Server-To-Go, a United States Company that claims to have been engaged by Tucker to develop a software program for the transfer of money over the Internet;[10]

- Twenty four payments totaling $675,000 of CEC investor funds were wired from a Riga, Latvia, bank directly to Tucker in St. Maarten or to a second Latvia bank to pay his credit card bill;[11]

---

[4] St. Maarten is the smallest Island in the world to be shared by two sovereign governments,-namely the Dutch and French.  Dutch St. Marteen, where it is believed Tucker resides, is part of the Kingdom of the Netherlands Antilles.

[5] Cook Dec., ¶ 7.

[6] Cook Dec., ¶ 8.

[7] Cook Dec., ¶ 9.

[8] Cook Dec., ¶ 10.

[9] Cook Dec., ¶ 13.

[10] Cook Dec., ¶ 11.

[11] Cook Dec., ¶ 12.

- Information recently produced by Tanner's counsel indicates that at least $227,000 of the $500,000 in legal fees paid to Tanner's attorneys were paid by wire transfer from an Antilles bank.[12]  Tucker is the only person known to be associated with CEC who resides in the Antilles; and

- While the Receiver can demonstrate that Tucker received or directed payment of approximately $18 million of CEC investor funds—the Receiver has yet to uncover even one financial account indicating that anyone named "David Tanner" obtained or controlled significant CEC funds.[13]

It also appears that Tucker's CEC related activities are lucrative.  The Commission understands from a private investigator's report commissioned by Seaforth that Tucker lives under heavy security—complete with 24 hour security, guard dogs, and cameras—in an extravagant villa on the island of St. Maarten and that he rarely leaves the villa.[14]

### C. *Additional discovery should allow the Commission to definitively determine the true identity of Tanner*

If allowed additional discovery in this matter, the Commission intends to pursue several recently-developed investigative leads that, it believes, will lead to a more definitive determination of the real CEC mastermind.  For example, the Commission intends to immediately depose Tucker.  Assuming he refuses to comply, the Commission believes that with an appropriate order of this Court compelling his appearance, combined with the assistance of foreign law enforcement authorities, it can effectively present Tucker with the possibility of severe sanctions for non-compliance.

Additional discovery limited to Tanner's true identity is important to finally and completely resolving this case.  If no additional discovery is taken and the judgment

---

[12] Cook Dec., ¶ 15.

[13] Cook Dec., ¶¶ 4, 6.

[14] Cook Dec., ¶ 14.

*SEC v. David Tanner, et al.*                                                                                         Page 6
**MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION TO MODIFY SCHEDULING ORDER**

against Tanner is left to stand, then the true mastermind of the scheme—presumably Tucker—will feel free to continue his violative conduct without even pausing to consider the ramifications of an SEC Injunction.  And of course, the $15 million judgment against Tanner will be uncollectible.

Tucker's involvement is also central to resolving other collateral disputes in this case.  For example, currently pending is the motion of the Receiver for the turnover of property against Server-To-Go [Doc. 188].  The Receiver and the Commission contend that Server-To-Go received $5 million of CEC investor funds in exchange for no or insufficient consideration.  Server-To-Go's defense is that they are an innocent third-party who received the money as part of an undocumented agreement with Tucker to develop software to aid in Internet money transfers.  A deposition by Tucker relating to his authority to commit $5 million of CEC investor funds to develop software for transferring money will be highly informative as to the strength of both parties' arguments.

## II.     Legal Argument

### A.     *Some limited additional discovery serves the interest of justice*

Fed. R. Civ. P. 16 provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge.  "[W]hile the pretrial order defines a lawsuits boundaries in the trial court and on appeal, total inflexibility is undesirable.[15]  The "good cause" requirement focuses on the diligence of the party

---

[15] *Hull v. Chevron U.S.A., Inc.*, 812 F.2d 584, 588 (10th Cir.1987) (citing Fed. R. Civ. P. 16 advisory committee's note).

*SEC v. David Tanner, et al.*                                                                                     Page 7
**MEMORANDUM IN SUPPORT OF UNOPPOSED**
**MOTION TO MODIFY SCHEDULING ORDER**

seeking to modify the scheduling order.[16]  The Court may also consider the potential prejudice to nonmoving party.[17]

The Commission submits that "good cause" exists to modify the Scheduling Order to allow for some additional discovery.  As set forth above, the Commission has diligently prosecuted this matter, but completion of the case has been delayed by an apparent attempt to mislead this Court, the Commission, and the Receiver as to the true identity of the CEC mastermind.  Importantly, a brief extension at this time does not hinder in any way the Receiver's ability to submit and implement a distribution to the victims of the CEC fraud.

Tanner, assuming *aruendo* he is a real person, is not prejudiced by a discovery extension.  The Court has already entered an agreed order allowing for injunctive relief and $15 million in disgorgement against him.  Any additional discovery related to Tucker does not change the relief ordered against Tanner.  And as indicated in the attached certificate of conference, Tanner "take[s] no position" and, thus, does not oppose this motion.

Alternatively, Fed. R. Civ. P. 69(a) provides that to aid in the execution of a civil judgment, a judgment creditor may "obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held."  Here, without the assistance of

---

[16] *See, i.e.., Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1149 (10th Cir.2006) (magistrate's refusal to allow modification of a scheduling order referenced plaintiff's failure to exercise "even a modicum of diligence" regarding discovery); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609(9th Cir. 1992) (holding that the good cause requirement focuses on the diligence of the party seeking to modify the scheduling order).

[17] *Johnson* at 609.

*SEC v. David Tanner, et al.*                                                                        Page 8
**MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION TO MODIFY SCHEDULING ORDER**

the Court, the Commission, the Receiver, and CEC investors are left with a judgment that it cannot collect against a fictitious person.  And the true CEC mastermind will be successful in defrauding this Court as he has defrauded CEC investors.

While the Commission is cognizant of its duty to efficiently prosecute this case and not waste the resources of this Court, it strongly believes the interests of justice are best served by allowing some additional limited discovery to follow recently-developed leads and determine the true identity of the CEC mastermind.  Given the potential for post-judgment and collection issues that would result by entering a judgment against a fictitious person, it is likely more efficient to resolve the issue of Tanner's identity now, than in later post-judgment filings.

### B.    The Commission should be allowed to serve Tucker by e-mail or regular mail

To ensure there is no delay in the additional requested discovery, the Commission further requests that it be allowed to serve Tucker by alternate service.  Fed. R. Civ. P. 4(f)(3) provides, in relevant part, that individuals in a foreign country may be served by "means not prohibited by international agreement as may be directed by the court." Applying this Rule, courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last know address, delivery to the defendants attorney, telex, and most recently, e-mail.[18]

---

[18]   *See SEC v. Tome,* 833 F.2d 1086, 1094 (2d Cir.1987) (condoning service of process by publication in the *Int'l Herald Tribune* ); *Smith v. Islamic Emirate,* Nos. 01 Civ. 10132, 01 Civ. 10144, 2001 WL 1658211, at *2-* 3, 2001 U.S. Dist. LEXIS 21712, at *5-*13 (S.D.N.Y. Dec. 26, 2001) (authorizing service of process on terrorism impresario Osama bin Laden and al-Qaeda by publication); *Levin v. Ruby Trading Corp.,* 248 F. Supp. 537, 541-44 (S.D.N.Y.1965) (employing service by ordinary mail); *Int'l Controls Corp. v. Vesco,* 593 F.2d 166, 176-78 (2d Cir.1979) (approving service by mail to last known address); *Forum Fin. Group, LLC v. President, Fellows at Harvard College,* 199 F.R.D. 22, 23-24 (D. ME. 2001)(authorizing service to defendant's attorney); *New England Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.,* 495 F. Supp. 73, 80 (S.D.N.Y.1980) (allowing service by telex for Iranian

Even if facially permitted by Rule 4(f)(3), a method of service of process must also comport with constitutional notions of due process.  To meet this requirement, the method of service crafted by this Court must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[19]

When confronted with someone like Tucker, who uses sophisticated electronic means to conceal an identity and evade law enforcement, courts have held that "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process."[20]  Previously, for many of the same reasons justifying alternative service for Tucker, Judge Crow allowed service of the original complaint on Tanner by alternate service [Doc. 9, p. 10].

Here, Tucker, who has extensive business dealings within the United States, has taken steps to avoid service by a process agent.  But while his location in St. Maarten is apparently fortified, making in-person service of process extraordinarily difficult, Tucker routinely uses e-mail communications in dealings with persons and entities who received CEC investor funds.  Thus, communications sent to the various e-mail addresses used by Tucker in those business dealings, as well as regular mail addressed to his villa, would be reasonably calculated to apprise him of the Commission's discovery requests and afford him the opportunity to object.  Of course, the Commission will also serve a copy of any discovery directed to Tucker on Tanner's counsel.

---

defendants); *In re Int'l Telemedia Assoc.,* 245 B.R. 713, 719-20 (Bankr. N.D. Ga. 2000) (authorizing service via email).

[19]    *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)

[20]    *Rio Properties, Inc., v. Rio Int'l Interlink,* 284 F.3d 1007, 1018(9th Cir. 2002).

### III. Requested Relief

As indicated in the proposed order accompanying this filing, the Commission respectfully requests that the Court re-open discovery for an additional 90 days. Discovery shall be limited to (1) the true identity of David Tanner, and (2) James Tucker's involvement in the CEC investment scheme. Additionally, the Commission requests that the Court allow the Commission to serve any discovery directed to James Tucker by (1) personal service, (2) regular mail to Tucker's last known address, or (3) e-mail to any e-mail address previously used by Tucker.

The Receiver has reviewed the instant motion and concurs in the relief sought.

DATED: June 19, 2006.

Respectfully submitted,

*s/ Timothy P. Davis*
TIMOTHY P. DAVIS
Kansas Bar No. 18647
Texas Bar No.  00798134

Attorney for Plaintiff
Securities and Exchange Commission
Burnett Plaza, Suite 1900
801 Cherry Street, Unit #18
Fort Worth, TX  76102-6882
(817) 978-6438
(817) 978-4927 (fax)
e-mail:  davistp@sec.gov